**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| ———————————————————— ) | |
| HOWARD UNIVERSITY ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 06-cv-2076 (DKC) |
| ) | |
| BELINDA LIGHTFOOT WATKINS, ) | |
| ) | |
| Defendant. ) | |
| ———————————————————— ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO DISMISS**
**OR FOR SUMMARY JUDGMENT**

Howard University fails to explain why it should be able to shift 100% of its settlement costs to its employee when it was itself culpable. In fact, Howard actually had superior knowledge of both the facts and the law when dealing with Daniel Goodwin. It is undisputed that Goodwin disclosed his HIV positive status directly to Howard's HR department, but not directly to Watkins, and it was Howard's General Counsel's office that investigated and ordered Watkins to accommodate Goodwin by permitting him to start work at noon. And it was the same offices—HR and General Counsel—that, knowing all this, approved and authorized Watkins' imposition of a Performance Improvement Plan and the non-renewal of Goodwin's contract. Indemnity is not available in such a case; to the extent that indemnity is ever available at common law, it is only available to a non-culpable party forced to pay for the wrongs of another. Where, as here, Howard is at least equally culpable if not more so, no claim for indemnity exists. In addition, the Supreme Court's holding in *Northwest Airlines*, *infra*, has been applied to bar both contribution and indemnity actions.

Faced with this, most of Howard's arguments are "red herrings" and distractions.  As we show below, all of Howard's claims should be dismissed.  Alternatively, to the extent that any of Howard's claims can go forward, this Court should transfer this case to the District of Columbia federal court where the conduct occurred, so that the same court that handled the Goodwin case can resolve this related proceeding, with all of the necessary parties joined in the same action, and with both of Howard's contradictory pleadings before the same tribunal.

## I.    JUDICIAL ESTOPPEL PREVENTS HOWARD FROM TAKING A DIFFERENT FACTUAL POSITION IN THIS LITIGATION THAN IT DID BEFORE

Howard University is attempting to "play fast and loose with the courts" by taking a factual position in this litigation that is diametrically opposed to the stance it asserted on those same facts in the prior litigation with Goodwin.  "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28-29 (4th Cir. 1995) (citations and internal quotation marks omitted); *cited with approval in Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996).

Howard University, after investigating the facts and interviewing Belinda Watkins, filed an Answer denying Goodwin's allegations of unlawful harassment and discrimination.  Exhibits 1 (Goodwin 2nd Amended Complaint), 6 (Howard's Answer to 2nd Amended Complaint).  It now cynically claims that it believed—at the time it filed its Answer in the Goodwin case denying all charges—that she had unlawfully harassed and discriminated against Goodwin.  Howard's Opp. at 9, see also HU Complaint at 44**.**  These are both *factual* positions taken by the same party, and the two different positions cannot be reconciled.  That is, Howard filed a pleading subject to Rule 11 denying Goodwin's factual allegations and legal claims, and has now filed a second

pleading taking precisely the opposite position, namely that Goodwin's claims were valid *and that Howard knew this at the time it was denying* those claims. (Because Howard's denial was filed in the District of Columbia before Judge Lamberth, this may be yet another reason to transfer this case back to the original district court and let Judge Lamberth decide whether the two pleadings can be reconciled.)

Watkins was interviewed a total of three times by Howard's General Counsel's office. Exhibit 7 (Watkins Decl., ¶ 19). Most importantly for our purposes, all three of those interviews were conducted <u>*before*</u> Howard filed its Answer to Goodwin's Complaint. Id., at ¶¶ 19-20. We know the timing because, in the third and final interview, Howard informed Watkins that it would not represent her and that she needed to hire her own attorney. Shortly thereafter, Watkins retained the firm of Khan Romberger, and her attorneys filed a "Notice of Appearance" on her behalf as of February 17, 2004. Exhibit 3 (Goodwin docket, #10)**.** Howard's Answer was filed nine days later, on February 26, 2004. Id. (docket #13)**.** Watkins was never deposed in the Goodwin case, and, consistent with the rules regarding represented parties, Howard never interviewed her again regarding Goodwin's allegation from the time that she retained her own counsel. Exhibit 7, ¶ 19. Accordingly, any information that Howard had from "interviewing" Watkins was already in their possession at the time Howard filed its Answer. It is this fact that sets up the conundrum for Howard—if its Answer to the Goodwin Complaint was true, then this suit against Watkins is utterly baseless.

Howard understood that it had a duty to investigate the facts of the case before filing an Answer. In fact, Howard sought and received an additional 30 days to file its Answer because it needed the time to investigate the facts of the case: "The additional time [to respond] is requested because **this is a fact intensive case** and the **time is needed to gather information** . . . to

prepare an appropriate Answer or other response to the Complaint." Exhibit 8 (Howard's Motion to Extend Time to Answer Goodwin Complaint).

If Howard believed that any of Goodwin's allegations were true, it was obligated to admit them. While a criminal defendant is entitled to "put the government to its proof"[1] and refuse to admit the truth of an indictment, a civil litigant has no such right. Howard University was required to admit or deny the allegations in Goodwin's complaint, and it was not entitled to avoid making admissions out of gamesmanship. Rule 11 specifically requires that all such denials be made based on the evidence to the best of the party's knowledge and belief:

> **Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions**
> * * *
> (b) <u>Representations to Court</u>. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> (1) . . .
> * * *
> (4) **<u>the denials of factual contentions are warranted on the evidence</u>** or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b) (emphasis added).

Howard's Answer to Goodwin's Complaint specifically denies that Watkins or anyone else at the University discriminated or retaliated against Goodwin. Compare Exhibits 1 and 6. At the time that its Answer was filed, Howard had completed all of its interviews of Watkins. Exhibit 6, ¶¶ 19-20. Directly contrary to the factual position it took in the Goodwin case, Howard now claims, in this Court, that when it interviewed Watkins (i.e., before the time it filed the Answer in Goodwin's case), Howard actually believed that Watkins *had* discriminated and retaliated against Goodwin. As it stated in its Opposition to the Motion to Dismiss:

---

[1] *United States v. Crockett*, 813 F.2d 1310, 1314 (4th Cir. 1987).

> When Goodwin filed his complaint, **the University re-interviewed Watkins**. Id. at 44. **It soon became clear** to all who participated in invest[igat]ing Goodwin's allegations that Watkins had prior knowledge of the extent and nature of Goodwin's illness and that she and Porter had engaged in unlawful harassment of Goodwin. Id. It also became apparent that Watkins believed that Goodwin was homosexual and that **her recommendation that Goodwin be terminated was for unlawful reasons**. Id.

Howard's Opp. at 9 (emphasis added), see also HU Complaint at 44.  Because there were no interviews of Watkins after February 17, 2004, if Howard's Answer in the Goodwin case met its Rule 11 obligations—and we should assume that it did—then Howard is judicially estopped from taking a contrary position in this litigation.  This is necessary to prevent Howard University from playing "fast and loose" with the Courts.  *John S. Clark Co.*, 65 F.3d at 28-29; *Lowery*, 92 F.3d at 223.  Accordingly, the foundation upon which Howard's case is built vanishes, and the case falls of its own weight.

## II.    HOWARD'S COMPLAINT FAILS TO PLEAD THE "WHO, WHAT, WHERE AND WHEN" OF THE FRAUD CLAIMS WITH PARTICULARITY

As we pointed out in our Motion, Howard has not given any details to explain the "who, what, where and when" of how Watkins (allegedly) misled Howard's lawyers.  There is not a single false or fraudulent statement identified, much less where, when or to whom it was spoken.  This omission is critical, and was not in any way corrected by Howard's Opposition.  Context matters, especially in fraud claims.  That is one of the reasons that the Federal Rules require that a complaint alleging fraud must provide all the particulars of the alleged fraud as the price of admission to get to the discovery process:

> As the Second Circuit has noted, articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). We agree with the Second Circuit's approach.
> * * *
> Directly put, **the who, what, when, and where must be laid out before access to the discovery process is granted**. So today we neither set springs for the unwary nor insist on "technical" pleading requirements. We remind that this bite of Rule 9(b) was part of

the pleading revolution of 1938. In short, **we apply the rule with force, without apology.**

*Williams v. WMX Techs.*, 112 F.3d 175, 177-178 (5th Cir. 1997) (emphasis added).  Under D.C. law, the rules are equally strict:

> Fraud is never presumed and must be particularly pleaded. It must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit. The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. . . . One pleading fraud must allege such facts as will reveal the existence of all the requisite elements of fraud. Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.

*Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002) (*citing* Super.Ct.Civ.R. 9(b); other citations omitted).  This Court should also apply Rule 9 "with force, and without apology" and dismiss Howard's complaint.

The particulars of the supposed fraud (Counts II and III) matter here because Howard has turned the incidents on their head.  Watkins was seeking legal advice *from* the General Counsel's office and HR regarding her options in dealing with an employee.  Goodwin admits that he was often unable to show up for work before noon, and that Watkins raised concerns about other aspects of his performance.  Exhibit 1 (Goodwin Compl., ¶¶ 23-45).  It is well-established that an employee who files EEO complaints does not acquire any special immunity from supervision or discipline.  And it is equally true that a supervisor who thinks a particular accommodation is unreasonable may still have legitimate reasons to discipline or terminate an at-will employee.

It is appropriate for a supervisor dealing with a disabled employee whose attendance and performance are problematic to seek the advice of more knowledgeable professionals in HR and General Counsel's office as to whether her concerns constitute a legitimate basis for non-

renewal, or not. Watkins left that decision up to the professionals.  Howard should not now be heard to complain about Watkins' reliance on HR and OGC.

The key here is that Howard has not alleged *any* statement by Watkins to Howard's lawyers that was false or misleading, much less where, when and to whom it was spoken.  This utterly fails to satisfy its legal obligation under Fed.R.Civ.P. 9(b).  Apparently, it is Howard's contention that Watkins committed a fraud by failing to say out loud that she had unlawful motives (something that is not true and that she disputes, Exhibit 1).

The notion that Watkins committed a fraud by silence is absurd on this record; the only way that Howard's lawyers could possibly have been deceived was if they had asked Watkins a direct question and she had given an intentionally false or fraudulent answer to it. That is because Watkins was seeking advice against a background of an employee who was being given an accommodation.   Howard's posited scenario is detached from the reality of how lawyers give advice—they ask the questions necessary to render proper advice.  If Watkins never said anything that was untrue—and Howard has not alleged any affirmatively false statements—there is simply no basis for Howard to claim that it was deceived or relied on any false information.  A lawyer cannot sit idly by, asking no questions before giving legal advice and then later claim a fraud because the client failed to answer questions that the lawyer never asked.  There is simply no way, in the context of giving Watkins advice, that Howard's lawyers could have been defrauded by anything other than an affirmatively false and fraudulent statement.  That is why Fed.R.Civ.P. 9 requires dismissal in this case.[2]

At the time of the alleged fraud, Howard's General Counsel's office and HR department were both on notice of all facts that may have given rise to a later claim of retaliation, and that

---

[2] Curiously, in the indemnity section of its Opposition (at 17), Howard refers multiple times to "misrepresentations" allegedly made by Watkins, but nowhere has Howard identified with the legally required specificity what these supposed "misrepresentations" were, much less when, where and to whom they were made.

was the matter upon which they gave advice to Watkins.  The essential issue was, in light of

Goodwin's disability and accommodation, was she permitted to not renew his contract or not.

Howard's lawyers had to ask enough questions to satisfy themselves that her reasons were

legally sufficient and were not retaliatory—if they chose not to, they cannot claim to have been

defrauded.  (Note that retaliation was the only claim that Goodwin exhausted on below, see

EEOC charge Exhibit 9 (Goodwin's EEOC charge—specifying retaliation as only basis).  Even

if Watkins had been asked directly about her motivations—which Howard does not contend—

statements of opinion or internal thought processes are rarely if ever the stuff of fraud claims

because fraud is based on deceiving another as to objective facts.  *See, e.g., Patterson v. Barrie*,

30 App. D.C. 531, 537 (D.C. Cir. 1908) (agent's representation that the sale price was a fair price

was not the kind of statement that would constitute a fraud); .

Even viewing the allegations in the light most favorable to Howard, at the time that

Watkins was seeking advice from HR and General Counsel, Howard knew that Goodwin was

HIV positive, knew that Goodwin had requested and Watkins had denied an accommodation of

his work schedule, knew that Watkins' decision about charging Goodwin's sick leave account

had been changed by the HR department to FMLA leave, and knew that Watkins had put

Goodwin on a Performance Improvement Plan after Goodwin was granted a reasonable

accommodation by the General Counsel's office.  Exhibit 1 (Goodwin Complaint, ¶¶ 22-45)

This is not a case where senior management can credibly contend that it had no idea what

decisions were being made by a low-level supervisor in a remote location.

The professionals in the HR department and in the Office of General Counsel were on

inquiry notice, to say the very least, that any adverse action by Watkins after Goodwin's internal

EEO complaints may result in a claim of retaliation by Goodwin.  That is why it is crucial for

Howard to allege in precise detail what specific words Watkins used or spoke that constituted a

fraudulent statement of fact, and to explain who (by name) <u>actually</u> relied on Watkins' statement,

when and where it was said, and how (if at all) it caused any injury.[3]

Because Watkins was seeking legal advice (in laymans' terms) on whether she had to put

up with Goodwin because of his disability, it was up to the subject-matter experts in HR and

General Counsel to ask the correct questions.  Watkins wrote in an email to General Counsel: "I

wanted to be certain that I was proceeding correctly and, at the same time, safeguarding

University liability, with these two personnel actions." Exhibit 4, Watkins Decl. at ¶ 5 and Exh.

C thereto.  Howard knew what the issues were, and the risk of a retaliation claim, and authorized

Goodwin's firing anyway.  Whatever the legal consequences of that may be, it was not a fraud

perpetrated on Howard by Watkins. That is why Howard's "failure to volunteer information"

theory simply does not work—their lawyers knew the legal issues and what questions to ask;

either she answered their questions truthfully or not. In this situation, silence could not be fraud.

Howard's vague assertions are insufficient to pass muster under Rule 9, and Counts II

and III must be dismissed.

## III.    HOWARD HAS NO CLAIM FOR INDEMNITY

Howard offers several reasons to support its indemnity claim, but none has merit.

### A.    *Northwest Airlines* Bars Both Contribution And Indemnity Claims

The reasoning in *Northwest Airlines, Inc. v. Transp. Workers Union of America*, 451 U.S.

77 (1981), has been applied to bar claims for both contribution and indemnity:

Although the decisions in *Texas Industries* and *Northwest Airlines* dealt only with the
right of contribution, the legal framework established in these cases has been extended to

---

[3] An interesting wrinkle here is that Watkins' communications with Howard's General Counsel's office likely were
privileged, which may be another reason why the fraud allegations are so sketchy.  However, once Howard decides
to go down this path, it has waived its privilege as to an entire category of communications.

the right to indemnity. *See Levit*, 874 F.2d at 1191; *Green v. United States Dept. of Labor*, 775 F.2d 964, 971 (8th Cir. 1985).

*Mortgages, Inc. v. United States Dist. Court*, 934 F.2d 209, 212 (9th Cir. 1991); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 144 (2d Cir. 1999) (interpreting *Northwest Airlines* to bar both contribution and indemnification, and collecting cases); *c.f. Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (under the FLSA, a court should not "engraft an indemnity action upon this otherwise comprehensive federal statute,").

Contrary to this well-established precedent, Howard asserts that *Northwest Airlines, Inc. v. Transp. Workers Union of America*, 451 U.S. 77 (1981) does not apply to indemnification claims, see Opp. at 13 ("It [*Northwest Airlines*] did not discuss indemnification at all, much less indemnification under state law and under the much broader DCHRA."). As shown above, the Supreme Court's reasoning in *Northwest Airlines* applies with to indemnity claims.

In addition, Howard's brief mis-apprehends the reasoning of *Northwest Airlines*, namely, that theories of indemnity and contribution cannot be applied except to protect the class for whose benefit the law was passed. In other words, because the DCHRA, no less than Title VII, was enacted to protect employ*ees* from employ*ers*, Howard University is not within the class for whose benefit the DCHRA was passed:

> it cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted. To the contrary, both statutes are expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees. In light of this fact, petitioner "can scarcely lay claim to the status of 'beneficiary' whom Congress considered in need of protection."

*Northwest Airlines*, 451 U.S. at 92 (citations and footnotes omitted). Howard's argument fares no better under the DCHRA than it would under Title VII—neither law was passed to protect employers. Thus, Howard's Opposition actually strikes the wrong chord when pointing out that the DCHRA is a remedial statute, broadly construed, Opp. at 14. D.C. Courts have consistently

sought to interpret the DCHRA to protect individual employees, and it would not construe this remedial statute to give employers such as Howard a weapon to pursue individual employees such as Watkins who filed their own DCHRA complaint.  A district court sitting in diversity "must determine the issues of state law as it believes the highest court of the state would determine them." *Thomas v. City Lights School, Inc.*, 124 F. Supp. 2d 707, 709 (D.D.C. 2000) (internal quotes and citations omitted).

Likewise, the DCHRA is at least as comprehensive a statutory scheme as Title VII, *compare* 42 U.S.C.A. §§ 2000e *et seq.* (Title VII) with D.C. Code 2-1401.01 *et seq.*, thus providing an equally strong argument for courts to resist engrafting remedies not contemplated by the legislature:  "The comprehensive character of the remedial scheme expressly fashioned by Congress **strongly evidences an intent not to authorize additional remedies**," *Northwest Airlines* 451 U.S. at 93-94 (emphasis added).  There is no reason to believe that the D.C. Court of Appeals, any more than the Supreme Court, would hold that the legislature inadvertently omitted the remedy of indemnification from such a comprehensive remedial statute that covers not only employment, but housing, educational institutions and public accommodations.

Finally, the two out of state cases cited by Howard are inapt.  As a threshold matter, both cases involved allegations of sex harassment where the only wrongdoing at issue was committed by the individual employee from whom indemnity was sought.  This is in marked contrast to the Goodwin situation, where both the Performance Improvement Plan and the non-renewal were authorized and blessed by multiple professionals in both HR and OGC.

On the merits, neither provides a basis to depart from *Northwest Airlines*.  The first case, *Biggs v. Surrey Broadcasting Co.*, 811 P.2d 111 (Ok. 1991), does not even address *Northwest Airlines*, but in explaining the common law approach, it holds that

> [the employee] should be given the opportunity to demonstrate that . . . [the employer] was a joint tortfeasor which knew or should have known of the sexually hostile working environment **and either ratified it or acquiesced in it** by declining to take timely and proper action to correct it.

*Biggs*, 811 P.2d at 115 (emphasis added).  In this regard, Howard not only ratified and acquiesced in the non-renewal of Goodwin's contract, but actually made the decision and gave the legal advice that brought this result about.  And, as we pointed out in our Motion, Howard would not be considered a "joint tortfeasor" in any event, see Motion, at 14-15.  The other case relied upon by Howard, *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775 (Ky 2000), quickly distinguished *Northwest Airlines* without really addressing the concept of what class of litigants were intended to be protected by the statute, nor whether it was a comprehensive statutory scheme. More importantly, though, *Degener* emphasized that under Kentucky law, indemnity is typically available only where one party has been exposed to liability because of the wrongful act of another, i.e., where the employer did not participate in the violation, and not—as in the Goodwin case—where the employer was at least as culpable as the purported indemnitor.

## B.    The Rule Urged By Howard Would Yield Perverse Results

If Howard truly came to believe that Goodwin was unlawfully discharged shortly after it spoke with Watkins, as it now asserts in its brief (Opp. at 9), then it should have immediately moved to remedy that termination by making Goodwin an "unconditional offer of reinstatement," *see, e.g., Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982) (unconditional offer of comparable job cuts off back pay and other make-whole relief).  Indeed, Howard's failure to make such an offer could be viewed as a failure to mitigate its losses.  Extending this point to its logical conclusion, one reason why an individual employee cannot logically be held liable for indemnification in an employment discrimination case is that an individual employee does not control the machinery of the workplace sufficiently to remedy the situation.

There is an inherent inequality and inability on the part of the supposed indemnitor to offer job-related relief.  That is, an employer is able to (and often is required to) provide reinstatement, or a clean record, or other in-kind benefits that an individual employee cannot. When an employer provides reinstatement, it is not the same as writing a settlement check, because the reinstated employee offers services in exchange for her compensation, the same services that the employer would have to pay someone else to perform.  By separating financial responsibility from the entity that can offer make-whole relief, Howard's rule leads to "moral hazard." In insurance theory, "moral hazard" refers to the risk of problematic or immoral conduct because the person who causes the problem does not suffer the full (or any) of the costs, and may even benefit from the bad conduct.

If the D.C. courts accepted Howard's over the Supreme Court's rejection of the same logic, it would create a "moral hazard" by permitting the "insured/employer" to *increase* the liability of the "insurer/employee" by refusing to offer reinstatement even where the employer believes that the termination was unlawful.  By refusing immediate reinstatement, the employer increases the cost to the insurer while benefiting itself (to the extent that reinstating a fired employee is viewed as an undesirable outcome).  Where the insurer is not an insurance company but an individual employee, this immoral behavior has the power to bankrupt people.

Viewed from a different perspective, this is yet another reason why Howard's failure to "tender" its defense to Watkins is fatal—the lack of notice deprived Watkins (the purported insurer) of any ability to object to Howard's decision to keep Goodwin out of work for another 20 months before settling, thus greatly increasing both back pay and damages.  See Exhibit 3 (Docket sheet, compare #13 Howard's Answer filed on 2/26/2005 with #36, Dismissal filed on 10/19/2005).  As stated in our Motion, an indemnitor must have the ability control either costs or

strategy of defense.[4]  The absence of that control yields immoral results, as this case amply

demonstrates.

### C.    Indemnity Is An "All Or Nothing" Claim, And Since Howard Cannot Recover It All, It Must Take Nothing

Howard did not plead an action for contribution, and continues to put all of its eggs in the

"indemnity" basket.  This is fatal.  Howard acknowledges that its indemnity claim seeks to shift

"the entire loss" to another, Opp. at 15.  But Howard cannot as a matter of law recover from

Watkins the entire amount that it paid to settle the Goodwin case.  That is because Howard

admits that $35,000 of the amount it paid Goodwin was paid to his attorney as fees, Opp. at 12.

Yet in the stipulation dismissing the Goodwin case, both Howard and Goodwin agreed that

Watkins was not responsible for either of their attorney fees:

> the above-captioned matter is dismissed, with prejudice, each party to bear its own
> attorney's fees [sic] and costs, except as otherwise agreed between Plaintiff Daniel
> Goodwin and Defendant Howard University

Stip. of Dismissal in Goodwin Case (attached as Exhibit 10).

Because all three parties were signatories to this stipulation, it is binding on all of them.

In the agreement, both Goodwin and Howard agreed that Watkins would not be liable to them

for either of their attorney fees. Id. And the other two parties to this agreement could not

---

[4] In responding to Watkins' due process point, Howard blurs the distinction between contribution and indemnity, a distinction that it is at pains to make elsewhere.  That is, Howard claims only to have stated its desire that Watkins "contribute" to a settlement with Goodwin, see McCormack Decl at ¶¶ 6-7.  McCormack's version is disputed, see Watkins' Decl. at ¶ 18, but even under their version, there is a world of difference between being asked to "contribute" to a settlement and being asked to indemnify the entire settlement.  Watkins was never notified that she had any interest in the amount of money that Howard was separately agreeing to pay Goodwin. This is a crucial point.

As a side issue, plaintiff's counsel McCormack has injected himself as a fact witness in this case on material issues and, should the Motion to Dismiss not be granted, McCormack likely will need to be deposed and therefore ineligible to continue as trial counsel.  In addition to that issue, plaintiff's counsel has created another problem by submitting a declaration in which his client purports to disclose comments made during a confidential mediation, see Chambers Decl. at ¶ 5.  Out of caution, Watkins found it necessary to register her dispute with Chambers' account, Watkins Decl. at ¶ 21, but more importantly, it was improper to submit to this Court _any_ declaration purporting to quote statements made during a confidential mediation session, and all such testimony should be stricken.

conspire to force Watkins to pay each other's attorney fees in violation of the clear language of this stipulation.  At a bare minimum, this further reduces the amount of money that is at issue, thereby making it clearer that the $75,000 threshold for diversity jurisdiction is not met once the reduced amount is pro-rated among the other potential individual indemnitors.

In fact, though, because Howard has chosen to rely solely on the legal theory of indemnification rather than contribution, it must stand or fall on its ability to shift 100% of its claimed liability.  But Howard cannot shift 100% of its claimed $253,000 settlement because of its stipulation.  Therefore, because Howard cannot shift the entire burden, it cannot shift only a portion of the burden under the theory of indemnity.  Accordingly, this is an independent reason to dismiss the indemnity count.

## IV.    THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF COLUMBIA

The easiest path to take is to transfer this case to the District of Columbia and let Judge Lamberth, who presided over the related Goodwin case, sort this out.   Howard's primary opposition to the *forum non conveniens* issue is to protest that venue exists in the District of Maryland.  In fact, the existence of venue is always a pre-requisite to issues of transfer for *forum non conveniens* (otherwise, the proper motion is to transfer for lack of venue.)

Even in an action where venue is proper, 28 U.S.C.A. § 1404(a) authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C.A. § 1404(a).  Section 1401(a) vests "discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

There are two showings needed to justify transfer under the statute. First, the Court must find that the plaintiff could have brought the action in the proposed transferee district in the first

instance, i.e., that venue for this case exists in the District of Columbia. *Van Dusen*, 376 U.S. at

622. Howard University does not dispute the fact that it could have brought this action in the

District of Columbia because all of the actions took place there, so the first condition is satisfied.

Accordingly, the issue of transfer turns on the second issue, namely that considerations of

convenience and the interest of justice weigh in favor of transfer to the District of Columbia.  On

this issue, the statute asks the court to balance a number of case-specific private and public-

interest factors, discussed below. *Stewart Org.*, 487 U.S. at 29; *see Contee v. Giant of Maryland*,

No. 05-2475 (RCL) (D.D.C. Aug. 17, 2006) (attached as Exhibit 11) (transferring case from D.C.

to Maryland and analyzing private and public interest factors).

**A.    Private Interest Factors**

The private interest factors considered by the court include: (1) the plaintiff's choice of

forum, unless the balance of convenience is strongly in favor of the defendants; (2) the

defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the

parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may

actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Trout Unlimited*, 944 F. Supp. at 16 (*citing Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd

Cir. 1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill.

1989).

*1.    Plaintiff's Choice of Forum*

While some deference is due to the plaintiff's choice of forum, a court "need give

substantially less deference when the forum preferred by the plaintiff is not his home forum."

*Boers v. U.S.*, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (Urbina, J.). Here, Howard University is in

the District of Columbia, and Maryland is not its "home" forum.  Indeed, all conduct occurred

within the District of Columbia, all records are there, and Howard has not ties at all to Maryland.

In the absence of meaningful ties to the controversy, courts give little deference at all to the plaintiff's choice of forum. *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995) (Friedman, J.) (*see also Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6-7 (D.D.C. 1996) (Urbina, J.) (finding no meaningful ties to the District of Columbia where the "material events that constitute the factual predicate for the plaintiff's claims" occurred in Maryland).

This factor supports transfer to the District of Columbia.

### 2.    Defendant's Choice of Forum

All conduct, events, decisions and communications relating to the plaintiff's lawsuit occurred in the District of Columbia.  All records are in the District of Columbia, as are all witnesses.  This factor supports transfer.

### 3.    Where the Claim Arose

While defendant disputes that Howard has a claim, to the extent that it alleges a claim, the claim arose in the District of Columbia.  Goodwin was employed in D.C., he was fired in D.C., and Goodwin's case was filed and settled in D.C.  This factor supports transfer.

### 4.    Convenience of the Parties

Because Howard, and its employees and records are in the District of Columbia, it would be more convenient for Howard to litigate in its home district.  This factor supports a transfer.

### 5.    Convenience of the Witnesses

Howard claims that all witnesses are within the subpoena power of the court.  Although that remains to be seen, even if it were true, it is beside the point because Watkins needs to implead third parties who cannot be sued in the District of Maryland.  The Supreme Court has recognized the ability to implead third parties as an important factor in transferring a case, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (U.S. 1947) (transfer out of New York proper for various

factors, including "a need to interplead an alleged independent contractor . . . which is a Virginia corporation domiciled in Lynchburg, that it cannot interplead in New York.").

Moreover, even assuming that all of Howard's employees are within the subpoena popwer of this Court, it would certainly be more convenient for them to appear in D.C. federal court than in Maryland because it takes far less travel time. This factor supports transfer.

### 6.    *Access to Evidence*

All of the records and other documentary evidence will come from the District of Columbia. Howard does not dispute this. The ease of access to sources of the proof favors transferring this case to the District of Columbia.

### B.    **Public Interest Factors**

The public-interest factors are: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Trout Unlimited*, 944 F. Supp. at 16. The public interest "is best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Id.* at 19. Given the facts of this case and the undisputed conclusion that D.C. law applies, judicial economy is best served by transferring this case to the District of Columbia.

Docket congestion appears to be neutral in that both judicial districts have crowded dockets. *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978). The Court in *Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89 (D.D.C. 2005) (Urbina, J.), in considering a case transfer, concluded that because the case was in its early stages and the Court had not familiarized itself with the underlying merits, there would be no delay associated with transfer to the District of Maryland. 403 F. Supp. 2d at 96. The same factors exist here, and favor a transfer to D.C.

There is a strong public interest exists in deciding a local D.C. controversy in the District of Columbia. All conduct and decisions, all statement and all employment was within the District of Columbia. The legal issues must be decided under D.C. law, and in all respects, this is a controversy local to the District of Columbia. This, too, supports a transfer. And finally, Judge Lamberth, in the *Contee* case (Exhibit 11), held that the location of the plaintiff's counsel was irrelevant. Accordingly, every factor but one supports a transfer of this case to D.C.

## V.    COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Assuming *arguendo* that common law indemnity would exist for a generic intentional infliction of emotional distress claim, there are still two fatal problems with Howard's complaint. First, Goodwin's Complaint failed to state a claim for Intentional Infliction of Emotional Distress (IIED), as described more fully in the Motion to Dismiss filed by Watkins in the Goodwin case (and attached as Exh. 2 to her Motion to Dismiss in this case), which motion is incorporated herein by this reference. For example, that Motion shows how Goodwin's IIED claim was time-barred, and prohibited by relevant precedent, including *Kerrigan v. Britches of Georgetown*, 705 A.2d 624, 628 (D.C. 1997) (IIED claims are limited); and *Duncan v. Children's National Medical Center*, 702 A.2d 207, 212 (D.C. 1997) (employer-employee conflicts generally do not rise to the level of outrageous conduct). In light of this very strong Motion to Dismiss that was never ruled upon in the Goodwin case, it is clear that Goodwin's IIED claim was not viable. Even if Howard claimed there was some nuisance value in settling a bogus claim (a dubious proposition in indemnity theory), the proportional value of that single, non-viable count would be well below the jurisdictional threshold of this Court's diversity jurisdiction, especially when it is clear that the gravamen of Goodwin's case was reprisal under the DCHRA.

## <u>CONCLUSION</u>

For the reasons stated herein, Howard's Complaint fails to state a claim upon which relief can be granted, and it should be dismissed.  No claim for indemnity exists on these facts, and the claims for fraud and misrepresentation fail to pass muster under Rule 9.  Alternatively, the Complaint should be dismissed for failure to meet the jurisdictional amount in controversy for diversity, or the Complaint should be transferred to the District of Columbia.


<u>        /s/                                    </u>
Stephen Z. Chertkof   (Bar No. 12709)
Tammany M. Kramer
HELLER, HURON, CHERTKOF,
LERNER, SIMON & SALZMAN
1730 M Street, N.W.,  Suite 412
Washington, D.C. 20036
(202) 293-8090
Fax:  (202) 293-7110

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                        )
DANIEL GOODWIN          )
                        )
        Plaintiff,      )
                        )
    v.                  ) Civil No. 1:03-cv-02447-RCL
                        )
HOWARD UNIVERSITY       )
                        )
    &                   )
                        )
BELINDA L. WATKINS      )
                        )
        Defendants.     )
_____ )

**DEFENDANT HOWARD UNIVERSITY'S ANSWER TO PLAINTIFF'S SECOND
AMENDED COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, AND DAMAGES**

Defendant Howard University, by and through

undersigned counsel, hereby responds to the Complaint filed

by Plaintiff, Daniel Goodwin.

**NATURE OF ACTION**

1.    The allegation contained in Paragraph 1 entitled

"Nature of Action," amounts to a legal conclusion to which

no response is required.  To the extent an answer is

required, the allegation contained in this paragraph is

denied.

**PARTIES**

2.    Upon information and belief, Defendant admits

that Plaintiff was a resident of the state of Maryland at

some point during his employment with Howard University.
Defendant admits that Plaintiff was employed by the
University from 1998 until June 2002.  In light of the
fluctuation in the number of hours worked each week by
Plaintiff, the Defendant neither admits nor denies that
Plaintiff worked more than 1,250 hours during any relevant
calendar year.  To the extent an answer is required, the
allegation that Plaintiff worked 1,250 hours during any
relevant calendar year is denied.

3.    The University admits that it is an institution
of higher learning established by an Act of Congress in
1867, located in the District of Columbia, but denies the
allegation set forth in the remainder of the paragraph as
it amounts to a legal conclusion to which no answer is
required.  However, to the extent that an answer is
required, the University denies the remaining allegations
set forth in paragraph three (3) of the Second Amended
Complaint.

4.    The University admits that at all relevant times,
Defendant Howard University has employed 50 or more
employees.

5.    The University admits that all relevant times,
Defendant Belinda Lightfoot Watkins, Plaintiff's former
supervisor and "employee," as defined by the Family Medical

2

Leave Act, during the relevant times described herein, was and is a resident of Maryland.

**JURISDICTION AND VENUE**

6.    The allegations set forth in Paragraph six (6) of the Second Amended Complaint amounts to a legal conclusion, to which no response is required.  To the extent that an answer is required, the University denies the allegation set forth in Paragraph six (6).

7.    The allegations set forth in Paragraph seven (7) of the Second Amended Complaint amounts to a legal conclusion, to which no response is required.  To the extent that an answer is required, the University denies the allegation set forth in Paragraph seven (7).

8.    The allegations set forth in Paragraph eight (8) of the Second Amended Complaint amounts to a legal conclusion, to which no response is required.  To the extent that an answer is required, the University denies the allegation set forth in Paragraph eight (8).

9.    The allegations set forth in Paragraph nine (9) of the Second Amended Complaint amounts to a legal conclusion, to which no response is required.  To the extent that an answer is required, the University denies the allegation set forth in Paragraph nine (9).

10.  The allegations set forth in Paragraph ten (10) of the Second Amended Complaint amounts to a legal conclusion, to which no response is required.  To the extent that an answer is required, the University denies the allegation set forth in Paragraph ten (10).

11.  The University admits that Plaintiff filed a charge of discrimination with the Washington Field Office of the Equal Employment Opportunity Commission ("EEOC") on September 11, 2002.  The University admits that the charge of discrimination was cross-filed at the same time with the Government of the District of Columbia, Office of Human Rights.  The University further admits that Plaintiff received his Right to Sue notice on August 5, 2003.  The University admits that the Plaintiff filed his claim with the Court within ninety (90) days of receipt of the Right to Sue letter issued by the Washington Field Office of the Equal Employment Opportunity Commission.

## FACTS

12.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twelve (12) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twelve (12).

13.  Admitted.

4

14.  Admitted.

15.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph
fifteen (15) of the Second Amended Complaint.  To the
extent that an answer is required, the University denies
the allegations set forth in Paragraph fifteen (15).

16.  The University admits that during Plaintiff's
hospitalization, Ms. Paulette Porter, an administrative
assistant who reported to Mrs. Belinda Lightfoot-Watkins in
the Office in which Plaintiff worked, stopped by frequently
to check on the Plaintiff.  The University lacks sufficient
information to admit or deny the allegation that upon
information and belief, Ms. Porter, during one of her
visits, learned of the Plaintiff's disability.  To the
extent that an answer is required, the University denies
the last sentence of Paragraph sixteen (16).

17.  Admitted.

18.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph
eighteen (18) of the Second Amended Complaint.  To the
extent that an answer is required, the University denies
the allegations set forth in Paragraph eighteen (18).

19.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph

nineteen (19) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph nineteen (19).

20.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty (20) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty (20).

21.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-one of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-one (21).

22.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-two (22) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-two (22).

23.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-three (23) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-three (23).

24.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-four (24) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-four (24).

25.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-five (25) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-five (25).

26.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-six (26) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-six (26).

27.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-seven (27) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-seven (27).

28.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-eight (28) of the Second Amended Complaint.  To the

extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-eight (28).

29.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph twenty-nine (29) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph twenty-nine (29).

30.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph thirty (30) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph thirty (30).

31.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph thirty-one (31) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph thirty-one (31).

32.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph thirty-two (32) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph thirty-two (32).

33.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph

thirty-three (33) of the Second Amended Complaint.  To the
extent that an answer is required, the University denies
the allegations set forth in Paragraph thirty-three (33).

34.  The University The University lacks sufficient
information to admit or deny the allegations set forth in
Paragraph thirty-four (34) of the Second Amended Complaint.
To the extent that an answer is required, the University
denies the allegations set forth in Paragraph thirty-four
(34).

35.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph
thirty-five (35) of the Second Amended Complaint.  To the
extent that an answer is required, the University denies
the allegations set forth in Paragraph thirty-five (35).

36.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph
thirty-six (36) of the Second Amended Complaint.  To the
extent that an answer is required, the University denies
the allegations set forth in Paragraph thirty-six (36).

37.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph
thirty-seven (37) of the Second Amended Complaint.  To the
extent that an answer is required, the University denies
the allegations set forth in Paragraph thirty-seven (37).

38.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph thirty-eight (38) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph thirty-eight (38).

39.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph thirty-nine (39) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph thirty-nine (39).

40.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty (40) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty (40).

41.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-one (41) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty-one (41).

42.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-two (42) of the Second Amended Complaint.  To the extent

that an answer is required, the University denies the allegations set forth in Paragraph forty-two (42).

43.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-three (43) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty-three (43).

44.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-four (44) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty-four (44).

45.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-five (45) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty-five (45).

46.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-six (46) of the Second Amended Complaint.   To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty-six (46).

47.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-

seven (47) of the Second Amended Complaint.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph forty-seven (47).

48.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-eight (48) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph forty-eight (48).

49.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph forty-nine (49) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph forty-nine (49).

50.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty (50) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph fifty (50).

51.  The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty-one (51) of the of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph fifty-one (51).

52.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty-two (52) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph fifty-two (52).

53.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty-three (53) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph fifty-three (53).

54.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty-four (54) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph fifty-four (54).

55.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty-five (55) of the Second Amended Complaint.  To the extent that an answer is required, the University denies allegations set forth in Paragraph fifty-five (55).

56.   The University lacks sufficient information to admit or deny the allegations set forth in Paragraph fifty-six (56) of the Second Amended Complaint.  To the extent

that an answer is required, the University denies
allegations set forth in Paragraph fifty-six (56).

57.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph fifty-
seven (57) of the Second Amended Complaint.  To the extent
that an answer is required, the University denies
allegations set forth in Paragraph fifty-seven (57).

58.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph fifty-
eight (58) of the Second Amended Complaint.  To the extent
that an answer is required, the University denies
allegations set forth in Paragraph fifty-eight (58).

59.  The University lacks sufficient information to
admit or deny the allegations set forth in Paragraph fifty-
nine (59) of the Second Amended Complaint.  To the extent
that an answer is required, the University denies
allegations set forth in Paragraph fifty-nine (59).

**COUNT I**

**(Retaliation)**

60.  The University adopts and incorporates by
reference its answers in Paragraphs 1 through 59 of the
Second Amended Complaint as fully asserted herein.

61.  The University denies the allegations set forth
in Paragraph 61 of the Second Amended Complaint.

62.  The allegations set forth in Paragraph 62 of the Second Amended Complaint amounts to legal conclusions, to which no response is required.  To the extent that an answer is required, the University denies the allegations set forth in Paragraph 62.

63.  The allegations set forth in Paragraph 63 of the Second Amended Complaint amounts to a legal conclusion, to which no response is required.

**COUNT II**

**(Disability Discrimination)**

64.  The University adopts and incorporates by reference its answers to Paragraphs 1 through 63 of the Second Amended Complaint as fully asserted herein.

65.  The University denies the allegations set forth in Paragraph 65 of the Second Amended Complaint.

66.  The University denies the allegations set forth in Paragraph 66 of the Second Amended Complaint.

67.  The University denies the allegations set forth in Paragraph 67 of the Second Amended Complaint.

68.  The University denies the allegations set forth in Paragraph 68 of the Second Amended Complaint.

69.  The allegations set forth in Paragraph 69 of the Second Amended Complaint amount to a legal conclusion, to which no response is required.  To the extent that an

answer is required, the University denies the allegations
set forth in Paragraph 69.

70.   The allegations set forth in Paragraph 70 of the
Second Amended Complaint amount to a legal conclusion, to
which no response is required.  To the extent that an
answer is required, the University denies the allegations
set forth in Paragraph 70.

**COUNT III**

**(Violation of Family and Medical Leave Act)**

71.   The University adopts and incorporates by
reference its answers to Paragraphs 1 through 70 of the
Second Amended Complaint as fully asserted herein.

72.   The University denies the allegations set forth
in Paragraph 72 of the Second Amended Complaint.

73.   The University denies the allegations set forth
in Paragraph 73 of the Second Amended Complaint.

**COUNT IV**

**(Intentional Infliction of Emotional Distress)**

74.   The University adopts and incorporates by
reference its answers to Paragraphs 1 through 74 of the
Second Amended Complaint as fully asserted herein.

75.   The University denies the allegations set forth
in Paragraph 75 of the Second Amended Complaint.

76.   The University denies the allegations set forth in Paragraph 76 of the Second Amended Complaint.

77.   The University denies the allegations set forth in Paragraph 77 of the Second Amended Complaint.

### FIRST DEFENSE

#### (Failure to state a claim)

The Second Amended Complaint fails to state a claim against Defendant upon which relief can be granted.

### SECOND DEFENSE

#### (Statute of Limitations)

Plaintiff's claims against the University may be barred by the applicable statute of limitations.

### THIRD DEFENSE

#### (Failure to Mitigate Damages)

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has failed to mitigate his damages, if any.

### FOURTH DEFENSE

#### (Waiver, Estoppel, Laches, Accord, Satisfaction)

Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, accord and satisfaction, and any other equitable defense found to be factually merited during the course of discovery or in trial of this action.

## FIFTH DEFENSE

Defendant has and at all times relevant hereto had a policy and practice of prohibiting discrimination in the workplace, and has instituted policies and procedures to address alleged discrimination in the workplace. Plaintiff failed to avail himself of preventive or corrective opportunities provide by Defendant.

## SIXTH DEFENSE

### (Exhaustion of Administrative Remedies)

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff has failed to exhaust his administrative remedies.

## SEVENTH DEFENSE

### (Set-Off)

Defendant is entitled to a set-off for any monies paid to Plaintiff as an advance or toward settlement of this matter.

## EIGHTH DEFENSE

### (Reserved Affirmative Defenses)

Defendant reserves the right to amend its Answer, to add additional or other defenses; to delete or withdraw defenses; and to add counterclaims as they may become necessary after reasonable opportunity for appropriate discovery.

## DEMAND FOR JURY TRIAL

Defendant demands a jury trial of 12.

**WHEREFORE,** Defendant Howard University respectfully requests that the Second Amended Complaint be dismissed with prejudice and that attorney's fees, costs, and such further or additional relief as the Court deems appropriate be awarded to Defendant.

Respectfully submitted,
**HOWARD UNIVERSITY**


/s/ Leroy T. Jenkins, Jr.
Leroy T. Jenkins, Jr.
D.C. Bar No. 414080
Senior Associate General Counsel
Howard University
Office of the General Counsel
2400 – 6th Street, N.W.
Johnson Administration Building
Washington, D.C.  20059
(202) 806-2650 (Office)
(202) 806-6357 (Facsimile)

Attorney for Defendant
**HOWARD UNIVERSITY**

## CERTICICATE OF SERVICE

I hereby certify that a copy of the foregoing Answer of Defendant Howard University to Plaintiff's Second Amended Complaint For Declaratory Judgment, Injunctive Relief, and Damages was sent by first class mail, postage pre-paid, on this 19th day of April 2004, to:

    Jeffrey G. Huvelle, Esquire
    Chad T. Tang, Esquire
    **COVINGTON & BURLING**
    1201 Pennsylvania Avenue, N.W.
    Washington, D.C.  20004

    Susan E. Huhta, Esquire
    **WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS**
    11 Dupont Circle, N.W.
    Suite 400
    Washington, D.C.  20036

    **COUNSEL FOR PLAINITFF**
    **DANIEL GOODWIN**


                        /s/ Leroy T. Jenkins, Jr.
                        Leroy T. Jenkins, Jr.
                        Counsel for Defendant
                        **HOWARD UNIVERSITY**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| _____ ) | |
| HOWARD UNIVERSITY                         ) | |
|                    Plaintiff,             ) | |
|                                           ) | |
|        v.                                 ) | Civil Action No.: 06-cv-2076 (DKC) |
|                                           ) | |
| BELINDA LIGHTFOOT WATKINS,                ) | |
|                                           ) | |
|             Defendant.                    ) | |
| _____ ) | |

## DECLARATION OF BELINDA LIGHTFOOT WATKINS

17.     I am over the age of 18 and competent to testify to the matters herein.  This declaration starts at paragraph 17 to continue the numbering from the declaration I signed in connection with the Motion to Dismiss to avoid confusion when referencing the paragraph numbers.

18.     At no time before Mr. Goodwin's case was dismissed was I told that Howard University intended to hold me financially responsible for the amount of money that it agreed to pay to Mr. Goodwin to settle the case.  I heard, late in the process, that Howard University was reluctant to put much more money towards settlement than it had offered to date and that, if the settlement amount went much higher, Howard would ask me to contribute to the settlement. However, I was not asked to contribute to the settlement, and I was never told that Howard expected me to pay the amount that they had separately agreed to pay to Goodwin.

19.     I was interviewed by Howard University's Office of General Counsel three times regarding Goodwin's EEO complaint.  In the third and final interview, I was informed that Howard's lawyers would not represent me and I had to retain my own lawyer.  Not long

afterwards, I retained the law firm of Khan Romberger.  Once I had my own lawyers, Howard never interviewed me again regarding Daniel Goodwin.  I was never deposed in connection with Goodwin's lawsuit.

20.      I have reviewed the Docket Sheet in Goodwin's legal case and I note that it shows that Karen Khan filed an appearance on my behalf on February 17, 2004.  All of my interviews with Howard's lawyers relating to the Goodwin case had been completed before Karen Khan filed her appearance.

21.      I have read the Declaration of Franklin Chambers attached to Howard University's Opposition to the Motion to Dismiss.  I deny the statement in Paragraph 5 of that declaration, and I deny that my EEO complaint was filed for any improper reason.  I filed my EEO complaint because I had a good faith belief that I was being discriminated against as stated in that complaint.


I hereby affirm under penalty of perjury that the foregoing is true and correct based on my personal knowledge.


_____
Belinda Lightfoot Watkins            Date

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |
|---|---|
| HOWARD UNIVERSITY<br>　　　　　Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: 06-cv-2076 (DKC) ) |
| BELINDA LIGHTFOOT WATKINS, | ) ) |
| 　　　　　Defendant. | ) ) |

## DECLARATION OF BELINDA LIGHTFOOT WATKINS

17.　　I am over the age of 18 and competent to testify to the matters herein. This declaration starts at paragraph 17 to continue the numbering from the declaration I signed in connection with the Motion to Dismiss to avoid confusion when referencing the paragraph numbers.

18.　　At no time before Mr. Goodwin's case was dismissed was I told that Howard University intended to hold me financially responsible for the amount of money that it agreed to pay to Mr. Goodwin to settle the case. I heard, late in the process, that Howard University was reluctant to put much more money towards settlement than it had offered to date and that, if the settlement amount went much higher, Howard would ask me to contribute to the settlement. However, I was not asked to contribute to the settlement, and I was never told that Howard expected me to pay the amount that they had separately agreed to pay to Goodwin.

19.　　I was interviewed by Howard University's Office of General Counsel three times regarding Goodwin's EEO complaint. In the third and final interview, I was informed that Howard's lawyers would not represent me and I had to retain my own lawyer. Not long

afterwards, I retained the law firm of Khan Romberger. Once I had my own lawyers, Howard

never interviewed me again regarding Daniel Goodwin. I was never deposed in connection with

Goodwin's lawsuit.

20.    I have reviewed the Docket Sheet in Goodwin's legal case and I note that it shows

that Karen Khan filed an appearance on my behalf on February 17, 2004. All of my interviews

with Howard's lawyers relating to the Goodwin case had been completed before Karen Khan

filed her appearance.

21.    I have read the Declaration of Franklin Chambers attached to Howard

University's Opposition to the Motion to Dismiss. I deny the statement in Paragraph 5 of that

declaration, and I deny that my EEO complaint was filed for any improper reason. I filed my

EEO complaint because I had a good faith belief that I was being discriminated against as stated

in that complaint.


I hereby affirm under penalty of perjury that the foregoing is true and correct based on my
personal knowledge.

_____   11/13/06
Belinda Lightfoot/Watkins        Date

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
DANIEL GOODWIN,               )
                              )
          Plaintiff,          )
                              )
     v.                       )     CASE No. 03cv02447 (RCL)
                              )
HOWARD UNIVERSITY, ET AL,     )
                              )
          Defendants.         )
_____)
```

**DEFENDANTS' MOTION FOR AN ENLARGEMENT OF TIME TO**
**RESPOND TO PLAINTIFF'S COMPLAINT**


The undersigned counsel is entering his appearance only for the purpose of filing this motion.  Defendants have not yet determined whether this matter will be handle by outside counsel.

Defendant Howard University, by and through undersigned counsel, hereby requests an enlargement of time to respond to plaintiff's complaint.  The additional time is requested because this is a fact intensive case and the time is needed to gather information and complete the other tasks that are necessary to prepare an appropriate Answer or other response to the Complaint.

In accordance with local rules, undersigned counsel
contacted Plaintiff regarding the relief requested in this
motion.  The Plaintiff consented to the requested enlargement
until and including February 23, 2004.

Howard University respectfully refers the Court to the
attached Memorandum of Points and Authorities in further support
of its stated position.

Respectfully submitted,

_____
Leroy T. Jenkins, Jr., 414080
Senior Associate General Counsel
Howard University
2400 Sixth Street, N.W., Suite 321
Washington, D.C.  20059
(202) 806-2650

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendant's Motion For Enlargement of Time To Respond To Plaintiff's Complaint was mailed, first class, postage pre-paid, this ___ day of January, 2004 to:

       Daniel Goodwin
       Post Office Box 75693
       Washington, D.C. 20001

       _____
       Leroy T. Jenkins, Jr.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
Daniel Goodwin,               )
                              )
          Plaintiff,          )
                              )
          v.                  )   CASE No. 03cv02447 (RCL)
                              )
HOWARD UNIVERSITY, ET AL,     )
                              )
          Defendants.         )
_____)
```

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION**

1.   Rule 6(b) of the Federal Court Rules of Civil Procedure.

2.   The inherent equity powers of the Court.

3.   The reasons stated in the Motion.

4.   This short delay does not prejudice the plaintiff.

5.   The consent of the plaintiff.

## CONCLUSION

The motion should be granted.

Respectfully submitted,

_____
Leroy T. Jenkins, Jr., 414080
Senior Associate General Counsel
Howard University
2400 Sixth Street, N.W., Suite 321
Washington, D.C. 20059
(202) 806-2650

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
DANIEL GOODWIN,                 )
                                )
          Plaintiff,            )
                                )
          v.                    )    CASE No. 03cv02447 (RCL)
                                )
HOWARD UNIVERSITY, ET AL,       )
                                )
          Defendants.           )
_____)
```

## ORDER

Having read and considered the request by defendant Howard University for an enlargement of time to respond to plaintiff's complaint, it is by the Court, this _____ day of _____, 2004;

**ORDERED**: that defendant's request for an enlargement of time to answer the complaint up to and including February 23, 2004, is hereby GRANTED.

```
                              _____
                              Judge Royce C. Lamberth
```

Copies to:

Daniel Goodwin                    Leroy T. Jenkins, Jr.
Post Office Box 75693             Office of the General Counsel
Washington, D.C. 20001           Howard University
                                 2400 6th Street, N.W., Suite 321
                                 Washington, D.C. 20059

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 100A200966 |

D.C. Office Of Human Rights

*State or local Agency, if any*   and EEOC

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. Daniel L. Goodwin | (202) 276-8874 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| P.O. Box 75693, Washington, DC 20013 | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Howard University | Cat D (501 +) | (202) 806-6100 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2400 6th Street, N.W., Washington, DC 20059 | | 001 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER *(Specify)*

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 06/30/2002 | 06/30/2002 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. I was hired by the above Respondent on August 9, 1998 as an Acting Assistant Dean. I was placed under the supervision of Ms. Lightfoot Watkins. Throughout my employment, I did not receive any reprimands regarding my job performance except those that were based upon my supervisor's unreasonable denial of my request for a reasonable accommodation of my medical disability. In October 1998, I was diagnosed with a disability. I provided my supervisor a doctor's documentation when requesting reasonable accommodation; however, she ignored my request. In February 2002, after filing an internal EEO complaint in regard to denying reasonable accommodation by my supervisor, I was accommodated. Thereafter, my supervisor retaliated against me by giving me negative comments about my performance and harassing me. Before filing an EEO complaint, this same supervisor gave me good performane reviews all the time. On June 30, 2002, my supervisor recommended the Respondent to not renew my contract.

II. Respondent has not given me any reason for the above action.

III. I believe that I have been retaliated against because of filing an internal EEO complaint, in violation of Section 503(A) under the Americans with Disabilities Act of 1990.

**Exhibit 1**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| Date 3/11/02   *Daniel L. Goodwin*   Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)* |

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
INTAKE RECORD

---

CHARGE NUMBER: 100A200966

---

CHARGING PARTY INFORMATION:
  Goodwin, Daniel L (Mr.)
  P.O. Box 75693
  Washington, DC 20013

(H)  (202) 276-8874
(W)

        ← redacted pursuant to D.C. code § 2-534(a)(2)
SOC SEC #:                        GENDER: M
BIRTHDATE:                        RACE  : B
COUNTY   : D C                    ORIGIN: O

JOB TITLE:
EXCLUDE CP NAME FROM 131/131a:

---

RESPONDENT INFORMATION:
  Howard University
  2400 6th Street, N.W.
  Washington, DC 20059

  (202) 806-6100
SUPERVISOR NAME :
SUPERVISOR TITLE:

R TYPE    : E
R COUNTY  : 001
SMSA CODE : 8872
SIC CODE  : 822
FUNCTION  :
EEO ID#   :
# EMPLOY  : Cat D (501 +)

---

| RECEIVED DATE: 091102 | RCVD OFFICE: 100 | | INTAKE STAFF: THN |
| THIS OFF DATE: 091102 | ACCT OFFICE: 100 | | INTAKE UNIT : 1 |
| DOV, FIRST   : 063002 | FEPA OFFICE: 10C | | INQUIRY DATE: 090402 |
| DOV, LAST    : 063002 | FEPA CHG NO: | | |

---

STATUTE: T          PROC TYPE: O       FEDERAL XFER:
BASIS  : OR         CONT. ACT:         FEDERAL CODE:
ISSUES : D2         SOURCE   : A

---

RESPONDENT CONTACT INFORMATION:          CHARGING PARTY CONTACT INFORMATION:
  Swygert, Patrick (Mr.)
  President
  Howard University
  2400 6th Street, N.W.
  Washington, DC 20059
  Phone: (202) 806-6100

---

ACTION CODE:
  B4 DATE:        OFFICE:        BY:      TO :      RSN:
  B5 DATE:        OFFICE:        BY:      TO :      RSN:
  B6 DATE:        OFFICE:        BY:      CAT:      CT1:          NEP:
  G1 DATE:        OFFICE:        BY:      STF:
  A0 DATE:        OFFICE:        BY:      TO :      RSN:

---

DATA COMPLETE: Y
DATE UPLOADED:

---

COMMENTS:



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

Mr. Daniel L. Goodwin
P.O. Box 75693
Washington, DC 20013

Re:     Daniel L. Goodwin v. Howard University
        EEOC Charge No.  100-A2-00966

Dear Mr. Goodwin:

The Equal Employment Opportunity Commission (EEOC) has determined that its efforts to conciliate this charge as required by the Americans with Disabilities Act of 1990, as amended, have been unsuccessful.  This letter constitutes the notice required by Section 1601.25 of the EEOC's Procedural Regulations which provides that the EEOC shall notify both parties in writing when it determines that further conciliation efforts would be futile or unproductive.

No further efforts to conciliate this charge will be made by the EEOC.  The Commission has also determined that it will not file a suit in this case.

This concludes the processing of this charge.  This letter will be the only notice of the charging party's right to sue sent by the Commission. **THE CHARGING PARTY MAY PURSUE THIS MATTER FURTHER ONLY BY FILING SUIT AGAINST THE RESPONDENT NAMED IN THE CHARGE IN U.S. DISTRICT COURT WITHIN 90 DAYS OF HIS RECEIPT OF THIS LETTER.   THEREFORE, IF A SUIT IS NOT FILED WITHIN THIS 90-DAY PERIOD, THE CHARGING PARTY'S RIGHT TO SUE WILL BE LOST.**

Sincerely,

Silvio G. Fernandez
Acting Director

Enclosures

cc:     Mr. Keith Miles, Manager for Litigation
        Office of the General Counsel
        Howard University
        2400 6th Street, NW
        Washington, DC 20059

**Exhibit 2**

EEOC Form 161-A (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

| To:Daniel L. Goodwin<br>P.O. Box 75693<br>Washington, DC 20013 | From: US Equal Employment Opportunity Commission<br>Washington Field Office<br>1400 L Street, N.W., Suite 200<br>Washington, D.C.  20005 |
|---|---|

[        ]   *On behalf of person(s) aggrieved whose identity is*
            *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 100-A2-00966 | Silvio G. Fernandez, Acting Director | (202) 275-7377 |

This Notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that is will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Barkey Fernandez*
Silvio G. Fernandez, Acting Director

*hand served 8/5/03*
*(Date Mailed)*

Enclosure(s)

c:   Mr. Keith Miles, Manager for Litigation
     Office of the General Counsel
     Howard University
     2400 6th Street, NW
     Washington, DC 20059



**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of Human Rights**

**Judiciary Square Office**
441 4th Street, NW Suite 570N
Washington, DC 20001
Phone: (202) 727-4559 • Fax: (202) 727-9589

**Penn Branch Office**
3220 Pennsylvania Avenue, SE, 1st Fl
Washington, DC 20020
Phone: (202) 727-4559 • Fax: (202) 645-6390

**Kenneth L. Saunders**
**Director**

March 15, 2004

Khan Romberger PLLC
Attn: Timothy Romberger
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036

Dear Mr. Romberger:

On March 4, 2004, I received your request pursuant to the District of Columbia Freedom of Information Act ("FOIA"), dated March 3, 2004, wherein you request a copy of the complete file relating or referring to the investigation of *Daniel L. Goodwin v. Howard University, et. al.* ("*Goodwin*").

Upon receipt of your request, the OHR performed a search, by name, of its records and determined that it does not possess any records responsive to your FOIA request. The OHR subsequently performed a search, by the EEOC docket number, of its records concerning the investigation of *Goodwin*. The OHR discovered 3 documents responsive to your FOIA request that are enclosed with this letter.

Mr. Goodwin filed a complaint of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) on September 11, 2002, which was cross-filed with the OHR pursuant to the work-sharing agreement between the OHR and the EEOC. The EEOC was to conduct the investigation in Mr. Goodwin's complaint. The OHR does not have any documents pertaining to Mr. Goodwin's charge other than the EEOC charge sheet, the workshare sheet, and the EEOC intake record.

You are entitled to the above-referenced documents, except for that portion of the document that would constitute a clearly unwarranted invasion of personal privacy pursuant to D.C. Code § 2-534(a)(2).

If you deem any portion of this letter to constitute a denial of your FOIA request, you have the right to appeal to the Mayor or to seek immediate judicial review in the District of Columbia Superior Court. An appeal to the Mayor shall be in writing, and shall include (1) a statement of the circumstances, reasons or arguments advanced in support of disclosure, and (2) a copy of this letter. If you have any questions, please contact me at (202) 727-6910.

Sincerely,

Michael P. Bruckheim

MICHAEL P. BRUCKHEIM
Freedom of Information Act Officer

## THE UNITED STATES OF THE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL GOODWIN,                              *

       Plaintiff,                        *

    v.                                    *    Civil Action No.:  1:03-cv-2447-RCL

HOWARD UNIVERSITY                            *

and                                         *

BELINDA L. WATKINS,                          *

       Defendants.                       *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### STIPULATION OF DISMISSAL WITH PREJUDICE

     Plaintiff Daniel Goodwin and Defendants Howard University and Belinda L.

Watkins, by their respective counsel, pursuant to Rule 41 of the Federal Rules of Civil

Procedure, hereby stipulate and agree that the above-captioned matter is dismissed, with

prejudice, each party to bear its own attorney's fees and costs, except as otherwise agreed

between Plaintiff Daniel Goodwin and Defendant Howard University.

 

Jeffrey G. Huvelle
DC Bar No. 227769
Chad Tang
DC Bar No. 464496

Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 662-6000
Facsimile:  (202) 662-6291

Susan E. Huta
DC Bar No. 14547

Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 DuPont Circle, N.W., Suite 400

Washington, DC 20036
(202) 319-1000
Facsimile: (202) 319-1010

Attorneys for Plaintiff Daniel Goodwin

Timothy F. McCormack
Bar No. 385025
Jennifer E. Keyser

BALLARD SPAHR ANDREWS & INGERSOLL, LLP
300 E. Lombard Street
18th Floor
Baltimore, Maryland 21202
(410) 528-5600
Facsimile: (410) 528-5650

Attorneys for Defendant Howard University

Karen A. Kahn
DC Bar No. 455297
Timothy W. Romberger
DC Bar No. 458225

Kahn Romberger PLLC
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036
(202) 828-1243
Facsimile: (202) 882-8756

Attorneys for Defendant Belinda L. Watkins

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

**RAYMOND CONTEE,**                           )
                                              )
                                              )
            **Plaintiff,**                    )
                                              )
**v.**                                        )          **Civil Action No. 05-02475 (RCL)**
                                              )
**GIANT OF MARYLAND, LLC,**                   )
                                              )
            **Defendant.**                    )
                                              )
_____)

## MEMORANDUM AND ORDER

The plaintiff, Raymond Contee, brings suit against the defendant, Giant of Maryland, LLC ("Giant"), alleging racial discrimination and retaliation under 42 U.S.C.A. § 1981 (West 1993 & Supp. 2006).  Presently pending before this Court is the defendant's motion [4] to dismiss the case based on improper venue, or in the alternative, to transfer the case to the District of Maryland.  For the reasons stated below, defendant's motion to transfer is hereby granted, and this case shall be transferred to the District of Maryland.

## BACKGROUND

Plaintiff is an African American resident of Maryland (Plano Dec. ¶ 10) who has worked for Giant in various locations in the metropolitan Washington, D.C. area since 1982.  (Am. Compl. ¶ 2.)  Defendant Giant's principal place of business is in Landover, Maryland, and is an indirect wholly owned subsidiary of Royal Ahold N.V.  (Answer ¶ 3.)  The defendant operates approximately 113 grocery stores in Maryland, 68 grocery stores in Virginia, 12 stores in New Jersey, six stores in the District of Columbia ("D.C."), and four stores in Delaware.  (Id.)

1

Plaintiff began as a produce worker for Giant, worked his way up through several management jobs, and was promoted to "Produce Specialist-Produce" in February 2001.  (Id. at ¶ 5.)  As a Produce Specialist, plaintiff's initial territory consisted of stores in Maryland and D.C.  (Id. at ¶ 9.)  Plaintiff alleges that once assigned to these stores, he was subjected to various offensive and distressing racist remarks by his Regional Merchandising Manager, Kevin Hayes.  (Am. Compl. ¶ 7, 9.)  Plaintiff alleges that Hayes was continually critical of his performance, treated him differently than the other employees under Hayes' supervision, none of whom was African American, and that Hayes neglected to give plaintiff important business information relating to plaintiff's job.  (Id. ¶ 10.)

Defendant placed plaintiff on a performance improvement place ("PIP") in April 2002 which changed plaintiff's territory to stores in Maryland and Virginia.  (Answer ¶ 11.)  Plaintiff believes this change in territory "was intended to force plaintiff to resign or, failing that, to make it more difficult for him to perform successfully."  (Am. Compl. ¶ 11.)  In August 2002, plaintiff made a complaint to Giant's Director of Human Resources, David White, and to an Equal Employment Opportunity officer ("EEO") at Giant about the alleged discriminatory treatment he was experiencing.  (Id.)

In September 2002, Giant placed plaintiff on probation for 90 days for reasons not explained in the amended complaint or answer.  (Answer ¶ 15.)  Plaintiff responded by filing a complaint of racial discrimination with the EEOC on December 8, 2002.  (Am. Compl. ¶ 16.)  In April 2003, plaintiff then "assumed the position of" Human Resources Manager in a Giant store (Answer ¶ 17), which according to the plaintiff includes a salary range with a lower ceiling than his previous position as a Produce Specialist.  (Am. Compl. ¶ 17.)

2

Plaintiff asserts the defendant's actions have caused him to suffer a loss in income and harm to his career, that he has been caused emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.  (Id. ¶¶ 23, 24.)  Plaintiff commenced this action on December 28, 2005, and seeks to be reinstated to the Produce Specialist position, compensatory damages for lost pay and benefits and emotional pain and suffering, punitive damages, attorney fees and expenses, prejudgment interest on all monetary sums awarded, and such other relief as the Court deems just.  (Id. Relief 1-6.)  The Court will address the threshold question of venue raised by defendant's motion to dismiss or in the alternative motion to transfer the case.

## DISCUSSION

### I.      Standard of Review

Defendant moves in the alternative to transfer this case to the District of Maryland, and argues that the case could have originally been brought in Maryland and that an examination of private and public "factors compels the conclusion that this action should be transferred." (Def.'s Mot. 9.)  In an action where venue is proper, 28 U.S.C.A. § 1404(a) nonetheless authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C.A. § 1404(a) (West 1993 & Supp. 2006).  Section 1401(a) vests "discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  Under this statute, the moving party bears the burden of establishing that transfer is proper.  Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16

(D.D.C. 1996) (Urbina, J.).

Accordingly, the defendants must make two showings to justify transfer.  Brannen v. Nat'l R.R. Passenger Corp., 403 F. Supp. 2d 89 (D.D.C. 2005) (Urbina, J.).  First, the defendants must establish that the plaintiff originally could have brought the action in the proposed transferee district.  Van Dusen, 376 U.S. at 622.  Second, the defendants must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district.  Trout Unlimited, 944 F. Supp. at 16.  As to the second showing, the statute calls on the court to weigh a number of case-specific private and public-interest factors which are detailed and discussed below.  Brannen, 403 F. Supp. 2d at 92; Stewart Org., 487 U.S. at 29.  The Court will address the elements necessary to justify transfer in turn.

## ANALYSIS

### I.      The plaintiff could have originally brought the action in the District of Maryland

Giant moves to transfer this case to the United States District Court for the District of Maryland, arguing that "it is readily apparent that a substantial part of events giving rise to the plaintiff's claims of discrimination and retaliation occurred in Maryland."  (Def.'s Mot. 7.)  The defendant contends that as of July 2002, when plaintiff's territory was changed to stores in Maryland and Virginia, the plaintiff's ties to D.C. ceased.  Id.  The plaintiff has worked consistently in Maryland stores from the time he became Produce Specialist in 2001 through his February 2006 transfer to a store on Eastern Avenue in Maryland.  (Pl.'s Opp'n 1-4.)  Plaintiff worked in Maryland and Virginia stores during his probation, which immediately preceded his alleged demotion.  (Def.'s Mot. 7.)  Furthermore, the plaintiff challenged his 90-day probation terms with the Baltimore District Office of the EEOC and the Maryland Commission on Human

4

Resources.  (Id. at Ex. C.)  Given the facts, the Court  therefore concludes that this case could

have originally been brought in the U.S. District Court in the District of Maryland.

## II.    Considerations of Convenience and the Interest of Justice Weigh in Favor of Transfer

Because the parties could have originally brought this action in Maryland, the Court's

next inquiry is to determine whether defendants have shown that the balance of the private and

public-interest factors weighs in favor of transfer to that forum.  Brannen, 403 F. Supp. 2d at 92;

Van Dusen, 376 U.S. at 613, Trout Unlimited, 944 F. Supp. at 16.  For reasons briefly addressed

below, the Court determines that defendants have shown that the case should be transferred to the

District of Maryland.

### A.    Private Interest Factors

The private interest factors considered by the court include: (1) the plaintiff's choice of

forum, unless the balance of convenience is strongly in favor of the defendants; (2) the

defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the

parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may

actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

Trout Unlimited, 944 F. Supp. at 16 (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3rd

Cir. 1995); Heller Fin., Inc. v. Riverdale Auto Parts, Inc., 713 F. Supp. 1125, 1129 (N.D. Ill.

1989); 15 Fed. Prac. & Proc. § 3848).

The Court affords some deference to plaintiff's choices of forum.  Air Line Pilots Ass'n

v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987) (Parker, J.).  The Court, however,

"need give substantially less deference when the forum preferred by the plaintiff is not his home

5

forum." <u>Boers v. U.S.</u>, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (Urbina, J.).  In this case, the

plaintiff's home forum is Maryland–not the District of Columbia.  (Pl.'s Opp'n 7.)  Because the

District of Columbia is not the plaintiff's home forum and, as mentioned above, D.C. lacks

meaningful ties to the controversy, the Court affords little deference to the plaintiff's choice of

forum.  <u>Chung v. Chrysler Corp.</u>, 903 F. Supp. 160, 165 (D.D.C. 1995) (Friedman, J.) (<u>see also</u>

<u>Kafack v. Primerica Life Ins. Co.</u>, 934 F. Supp. 3, 6-7 (D.D.C. 1996) (Urbina, J.) (finding no

meaningful ties to the District of Columbia where the "material events that constitute the factual

predicate for the plaintiff's claims" occurred in Maryland).  The Court finds this factor weighs in

favor of transfer.

Regarding the defendant's choice of forum, the alleged events of discrimination and

retaliation material to the plaintiff's action occurred in Maryland.  Giant's assertion that all of the

employment records that are potentially relevant to this action are located in Maryland and that

the majority of potential witnesses reside in Maryland (Def.'s Reply 2) also supports its choice of

forum.  <u>Brannen</u>, 403 F. Supp. 2d at 93.  Thus, defendant's choice of forum also favors transfer.

The third private interest factor to consider determines whether a claim arose elsewhere.

As noted above, plaintiff primarily worked in Maryland and the alleged discrimination and

retaliation occurred during the time plaintiff was working in Maryland stores.  This leads the

Court to find that this claim arose elsewhere, in Maryland, and that this factor also weighs in

favor of transfer.

Next, when examining the convenience of the parties, the Court notes that the District of

Columbia and District of Maryland are close in physical proximity, thereby minimizing any

inconvenience to the parties.  <u>Id.</u> at 94.  Plaintiff makes the argument that the counsel for both

parties are located in D.C., and for this and other reasons the case should remain in D.C.  (Pl.'s Opp'n 6).  The Court disagrees.  "The location of counsel carries little, if any, weight in analysis under § 1404(a)."  Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991) (Hogan, J.).  Plaintiff's arguments do not persuade the Court that litigating in Maryland would be any inconvenience.  The Court determines transfer would not be an additional inconvenience for either party, and concludes this factor weighs neither for nor against transfer.  Brannen, 403 F. Supp. 2d at 94.

In addressing the convenience of the witnesses to the forum, the Court considers this factor "only to the extent that the witnesses may actually be unavailable for trial in one of the fora."  Trout Unlimited, 944 F. Supp. at 16.  Here, neither party has contended that a witness would be unavailable if the case is transferred to the District of Maryland.  Giant argues that, conversely, the vast majority of the potential witness actually reside and work in Maryland.  (Def.'s Mot. at Ex. B.)  Convenience of the witnesses weighs in favor of transferring this case.

As stated previously, the defendant argues that most of the employment records and witnesses will come from Maryland.  (Def.'s Reply at 1, 2.)  Plaintiff does not contest that argument or that the majority of the discovery will originate in Maryland.  The Court thus finds that the ease of access to sources of the proof favors transferring this case to the District of Maryland.

**B.   Public Interest Factors**

The public-interest considerations include: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  Trout

7

Unlimited, 944 F. Supp. at 16.

The public interest "is best served by having a case decided by the federal court in the state whose laws govern the interests at stake." Id. at 19.  Given the facts of this case and the greater potential for Maryland law to govern, the Court finds judicial economy is best promoted by transferring this case to Maryland.

Docket congestion is an additional consideration for courts deciding whether to transfer a case.  SEC v. Savoy Indus., Inc., 587 F.2d 1149, 1156 (D.C. Cir. 1978); Trout Unlimited, 944 F. Supp. at 16.  The Court in Brannen, also considering a case transfer, concluded that because the case was in its early stages and the Court had not familiarized itself with the underlying merits, there would be no delay associated with transfer to the District of Maryland.  403 F. Supp. 2d at 96.  Similarly, this Court finds there would be no unreasonable delay in transferring this case to the District of Maryland.

The defendant asserts a strong public interest exists in deciding a local Maryland controversy in Maryland.  (Def.'s Reply at 7, 8.)  In its motion, the defendant reiterates that "the alleged wrongful acts in this case occurred in Maryland, plaintiff is a resident of Maryland, and Giant's principal place of business is located in Maryland."  (Def.'s Mot. 11.)  Therefore, the Court is persuaded that this case is a controversy local to the District of Maryland, and thus supports transfer.

## CONCLUSION AND ORDER

Upon consideration of defendant's motion [4] to dismiss the case based on improper venue, or in the alternative, to transfer the case to the District of Maryland, the applicable law, and the entire record herein, for the foregoing reasons, it is hereby

8

ORDERED that defendant's motion in the alternative to transfer the case to the District of Maryland is GRANTED.  Defendant's motion to dismiss is DENIED.

SO ORDERED.


Signed by Royce C. Lamberth, U.S. District Judge, August 17, 2006.

9