UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
HOWARD UNIVERSITY,            )
                              )
          Plaintiff,          )
                              )
          v.                  )        Civil Action No. 07-472 (RWR)
                              )
BELINDA LIGHTFOOT WATKINS,    )
                              )
          Defendant.          )
_____)

MEMORANDUM OPINION AND ORDER

Plaintiff Howard University ("Howard") brings this action against Belinda Lightfoot Watkins, Howard's former Acting Dean for Student Life and Activities, for indemnification, fraud, and misrepresentation, based upon Watkins' actions that resulted in a successful claim of discrimination and retaliation against Howard by a former employee. Watkins has moved to dismiss or in the alternative for summary judgment, and Howard opposes. Because the complaint states plausible claims of equitable indemnification, fraud and misrepresentation, the motion will be denied.

BACKGROUND

The complaint alleges the following facts. Watkins was employed by Howard from 1976 through July 2006. In 1998, Watkins was named the Acting Dean for Student Life and Activities, which was a supervisory position. Two of the employees supervised by Watkins were an administrative assistant named Paulette Porter,

-2-

and an Acting Assistant Dean of Students named Daniel Goodwin.
(Compl. ¶¶ 5-7, 14.)  In September 1998, Goodwin suffered a
stroke that caused him to be hospitalized.  Goodwin learned
during his hospital stay that he was infected with the Human
Immunodeficiency Virus ("HIV").  (Id. ¶ 16.)  Porter frequently
visited Goodwin during Goodwin's hospital stay.  During those
visits, Porter learned that Goodwin was infected with HIV, and
communicated that information to Watkins.  (Id. ¶¶ 17-18.)  When
Goodwin returned to work in February 1999, Porter harassed
Goodwin.  (Id. ¶¶ 19-21.)  Watkins knew how Porter was treating
Goodwin, but did not discipline Porter or otherwise stop the
harassment.  Indeed, Watkins made inappropriate statements about
Goodwin and about male students who met with Goodwin which led
students to believe that Goodwin suffered from Acquired Immune
Deficiency Syndrome.  (Id. ¶¶ 22-25.)

Goodwin experienced side effects from his HIV medication
that prevented him from arriving at the office at the regularly
scheduled starting time.  He attempted to compensate for his late
arrival by staying past the office's regularly scheduled closing
time, but Watkins admonished Goodwin by letter for arriving late
to the office.  Goodwin responded by asking Watkins to
accommodate him by allowing him to arrive at work after the
office opened and stay until after the office closed, but Watkins
refused Goodwin's proposed accommodation.  (Compl. ¶¶ 28-32.)

-3-

In 2002, Watkins proposed that Howard refrain from renewing Goodwin's contract as Acting Assistant Dean of Students. (Id. ¶ 34.)  Representatives from Howard's Office of General Counsel and Office of Human Resources Management asked Watkins to explain why she recommended not renewing Goodwin's contract, and if Goodwin was a member of a class protected by federal or local anti-discrimination laws.  Watkins responded by stating that Goodwin had "behavior problems" including excessive socializing, disrespectful behavior, misrepresenting his position, and spreading rumors that Watkins had a drinking problem.  Watkins did not inform Howard's representatives that Goodwin was infected with HIV.  Howard approved Watkins' recommendation to not renew Goodwin's employment contract, which then expired on June 30, 2002.  Howard would not have approved Watkins' recommendation to not renew Goodwin's contract had it been aware that Goodwin suffered from the HIV infection, or that Watkins had denied Goodwin's request for an accommodation.  (Id. ¶¶ 29-30, 35-41, 45.)

Goodwin filed a claim with the U.S. Equal Employment Opportunity Commission ("EEOC").  The EEOC found that Watkins' decision to recommend not renewing Goodwin's contract constituted retaliation for his request for accommodation.  (Id. ¶ 42.) Goodwin later filed suit against Howard and Watkins, alleging claims of discrimination in violation of the Americans with

-4-

Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12111 et seq., the
District of Columbia Human Rights Act ("DCHRA"), D.C. Code Ann.
§ 2-1401.01 et seq., Section 504 of the Rehabilitation Act, 29
U.S.C. § 794, and the Family and Medical Leave Act of 1993
("FMLA"), 29 U.S.C. § 2601 et seq. (Def.'s Mem. in Supp. of Mot.
to Dismiss or for Summ. J. ("Def.'s Mem.") Ex. 1.) Howard
settled Goodwin's claims against both the University and Watkins
by paying Goodwin $253,000 in damages and attorneys fees.
(Compl. ¶¶ 46-47.)

Howard later filed this four-count complaint[1] alleging
claims of equitable indemnity (Count I), misrepresentation by
concealment (Count II), constructive fraud (Count III), and
negligent misrepresentation (Count IV)[2]. Watkins has moved to
dismiss or for summary judgment, arguing that Howard failed to
plead fraud with particularity, that employers are not allowed to
seek contribution or indemnity from their employees for

---

[1] Howard initially filed this complaint in the United States
District Court for the District of Maryland. However, that court
transferred this action to the District of Columbia. See Howard
University v. Watkins, Civil Action No. 2006-2076 (DKC), 2007 WL
763182, at * 4 (D. Md. March 12, 2007).

[2] The defendant asserts, and the plaintiff does not contest,
that the plaintiff's claims are brought under and governed by
District of Columbia law. (Def.'s Mem. in Supp. of Mot. to
Dismiss or for Summ. J. ("Def.'s Mem.") at 16.) A court may base
its analysis upon such concessions by parties. Ali v.
Mid-Atlantic Settlement Servs., 640 F. Supp. 2d 1, 10 n.7 (D.D.C.
2009) (citing Jacobsen v. Oliver, 555 F. Supp. 2d 72, 77 (D.D.C.
2007) and CSX Transp., Inc. v. Commercial Union Ins. Co., 82 F.3d
478, 482-83 (D.C. Cir. 1996)).

successful claims of discrimination, and that the remaining

claims are merely mislabeled attempts to re-state Count I's claim

for equitable indemnity.  Howard opposes.

<u>DISCUSSION</u>

"A complaint can be dismissed under Rule 12(b)(6) when a

plaintiff fails to state a claim upon which relief can be

granted." <u>Peavey v. Holder</u>, 657 F. Supp. 2d 180, 185 (D.D.C.

2009) (citing Fed. R. Civ. P. 12(b)(6)).  "A Rule 12(b)(6) motion

to dismiss tests the legal sufficiency of a complaint."

<u>Smith-Thompson v. Dist. of Columbia</u>, 657 F. Supp. 2d 123, 129

(D.D.C. 2009).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, acceptable as true,
> to "state a claim to relief that is plausible on its
> face." . . .  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell

Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007)).  The

complaint must be construed in the light most favorable to the

plaintiff and "the court must assume the truth of all

well-pleaded allegations." <u>Warren v. Dist. of Columbia</u>, 353 F.3d

36, 39 (D.C. Cir. 2004).  In deciding a motion brought under

Rule 12(b)(6), a court does not consider matters outside the

pleadings, but a court may consider on a motion to dismiss "the

facts alleged in the complaint, documents attached as exhibits or

-6-

incorporated by reference in the complaint," <u>Gustave-Schmidt v. Chao</u>, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," such as Goodwin's complaint in the underlying discrimination case.  <u>Hinton v. Corr. Corp. of Am.</u>, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quoting <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998)).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" <u>Twombly</u>, 550 U.S. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  <u>Iqbal</u>, 556 U.S. at 662 (quoting <u>Twombly</u>, 550 U.S. at 557).

"[W]here both parties submit material outside the pleadings and 'the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete' legal issues, the court may convert the motion to one for summary judgment 'without providing notice or the opportunity for discovery to the parties.'"  <u>Highland Renovation Corp. v. Hanover Insurance Group</u>, 620 F. Supp. 2d 79, 82 (D.D.C. 2009) (quoting <u>Tunica-Biloxi Tribe of La. v. United States</u>, 577 F. Supp. 2d 382, 405 (D.D.C. 2008)

and Smith v. United States, 518 F. Supp. 2d 139, 145, 155 (D.D.C. 2007)).  A motion for summary judgment is properly granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.  Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  "In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant."  Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson, 477 U.S. at 255); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must determine "whether there is a need for trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Citizens for Responsibility and Ethics in Wash. v. Bd. of Governors of the Fed. Reserve, 669 F. Supp. 2d 126, 129 (D.D.C. 2009) (internal quotation omitted).

I.   EQUITABLE INDEMNIFICATION

        "The common law remedy of indemnity arises from an express or implied contract giving the right of complete reimbursement to one party who has been compelled to pay that which should have been paid by another."  Harris v. Howard Univ., 28 F. Supp. 2d 1,

23-24 (D.D.C. 1998) (citing <u>Howard Univ. v. Good Food Serv.</u>, 608
A.2d 116 (D.C. 1992)).  The "obligation to indemnify exists where
the equities of the case and the relationship of the parties
support shifting responsibility from one party to another."
<u>Howard Univ. v. Good Food Services, Inc.</u>, 608 A.2d 116, 122 (D.C.
1992) (citing <u>Nat'l Health Labs., Inc. v. Ahmadi</u>, 596 A.2d 555,
557-58 (D.C. 1991) and <u>George's Radio Inc., v. Capital Transit
Co.</u>, 126 F.2d 219, 222 (1942)).  "In the absence of an express
contractual duty to indemnify, a right to indemnity exists where
a duty to indemnify may be implied out of a relationship between
the parties to prevent a result which is unjust." <u>Good Food
Services</u>, 608 A.2d at 122; <u>see also</u> <u>C&E Services. v. Ashland,
Inc.</u>, 498 F. Supp. 2d 242, 266 (D.D.C. 2007) (stating that
equitable indemnification may be used to obtain an equitable
outcome and prevent injustice or otherwise unsatisfactory
results).  If a "wrongful act of one person results in the
imposition of liability upon another without that other's fault,
indemnity may be recovered from the actual wrongdoer." <u>Cokas v.
Perkins</u>, 252 F. Supp. 563, 567 (D.D.C. 1966)(stating that "one of
the most common" situations in which courts impose equitable
indemnity is where an employer "has become subject to liability"
because of an employee-tortfeasor).  "[A] prerequisite for a
claim for equitable indemnification 'is that the party seeking it
(indemnitee) have discharged the liability for the party against

whom it is sought.'" C&E Services, 498 F. Supp. 2d at 267

(quoting Dist. of Columbia v. Washington Hosp. Ctr., 722 A.2d

332, 340 (D.C. 1998)).  "Indemnity has been granted to prevent

unjust enrichment" in several situations, such as where the

"indemnitee was liable only vicariously for the conduct of the

indemnitor," and where the "indemnitee was induced to act by a

misrepresentation on the part of the indemnitor, upon which [it]

justifiably relied." Washington Hosp. Ctr., 722 A.2d at 340 n.9.

Watkins argues, citing Northwest Airlines v. Transp. Workers

Union, 451 U.S. 77, 79-80 (1981), that Howard's claim for

equitable indemnity should be dismissed because employees are not

liable to their employers for contribution or indemnity for Title

VII liability caused by those employees.  (Def.'s Mem. at 7-9.)

The Court in Northwest Airlines held that Title VII and the Equal

Pay Act did not create a statutory cause of action for indemnity

or contribution against employees responsible for Title VII

discrimination liability.  According to the Court, the

"comprehensive character of the remedial scheme[s] [in the Equal

Pay Act and Title VII] expressly fashioned by Congress strongly

evidences an intent not to authorize additional remedies . . .

The judiciary may not, in the face of such comprehensive

legislative schemes, fashion new remedies that might upset

carefully considered legislative programs " Northwest Airlines,

451 U.S. at 95-97.  The Northwest Airlines opinion addressed the

possibility of state law causes of action for equitable
indemnification, by stating that "federal courts, including this
Court, have recognized a right to contribution under state law in
cases in which state law supplied the appropriate rule of
decision." Id., 451 U.S. at 95, 97 n.38; see also Donajkowski v.
Alpena Power Co., 460 Mich. 243, 264 (1999) (allowing employer to
bring a third-party claim against union in gender discrimination
case brought under federal and state anti-discrimination
statutes); Rodolico v. Unisys Corp., 189 F.R.D. 245, 247
(E.D.N.Y. 1999) (allowing employer to bring claim for
contribution for potential New York Human Rights Law liability).
In this case, even assuming that the ADA, Rehabilitation Act, and
FMLA prohibit employers from bringing causes of action for
contribution or indemnification against employees, at least some
of the appropriate rule of decision is created by state law since
Goodwin's suit included a claim under the DCHRA.

The DCHRA provides that "[a]ny person claiming to be
aggrieved by an unlawful discriminatory practice shall have a
cause of action in any court of competent jurisdiction for
damages and such other remedies as may be appropriate." D.C.
Code § 2-1403.16(a). Unlike Title VII or the Equal Pay Act, the
DCHRA imposes liability on individuals. See D.C. Code §
2-1401.02(10); Wallace v. Skadden, Arps, Slate, Meagher & Flom,
715 A.2d 873, 888 (D.C. 1998) (finding that the DCHRA applies to

individual partners of law firm when the partners acted in the interest of the employer, a law partnership); <u>Zelaya v. UNICCO Serv. Co.</u>, 587 F. Supp. 2d 277, 284-85 (D.D.C. 2008) (ruling that plaintiff's former supervisor could be held individually liable under the DCHRA).  Furthermore, unlike the situation in <u>Northwest Airlines</u> where there was no common law cause of action available at the time the statutes in question were created, a common law cause of action for equitable indemnification existed at the time when the District of Columbia legislature enacted the DCHRA. Watkins has provided no authority establishing that the DCHRA precludes causes of action for equitable indemnification by employers, or that the legislature manifested some intention to foreclose a long-established cause of action such as equitable indemnification.

Watkins also argues that Howard's complaint does not state a plausible claim for equitable indemnity because Howard was at least partially responsible for the discrimination suffered by Goodwin independent of Watkins' actions, making it inequitable to impose indemnification against Watkins.  Watkins further argues that, while the assertions in the complaint could justify contribution, Howard is not asking for contribution in its complaint.  (Def.'s Mem. at 10.)  According to Watkins, Howard shares blame for Goodwin's successful cause of action because Porter engaged in some of the harassment of Goodwin, University

-12-

officials other than Watkins had to review and approve the
decision to not renew Goodwin's contract, and because Howard's
"in-house experts on accommodation and EEO law reviewed, advised
and concurred in the decisions regarding Goodwin's employment."
(Id. at 10-12.)

Watkins' argument is not persuasive.  "When based upon
equitable principles, indemnity is restricted generally to
situations where the indemnitee's conduct was not as blameworthy
as that of the indemnitor."  Washington Hosp. Ctr., 722 A.2d at
340 (citing R. & G. Orthopedic Appliances v. Curtin, 596 A.2d
530, 544 (D.C. 1991)).  Here, Howard's complaint asserts that its
liability to Goodwin was almost entirely the fault of Watkins,
and to the extent that Porter was responsible for some of the
conduct, Howard's complaint alleges that Watkins knew of that
conduct and failed to report it, preventing Howard from acting
prophylacticly.  (See Compl. ¶¶ 22-25, 35-41, 49; Pl's Opp'n at
16-18.)

Watkins urges that dismissal of Count I is warranted because
Howard did not tender its defense to Watkins or provide her with
an opportunity to review and approve the terms of the settlement
with Goodwin.  (Def.'s Mem. at 12.)  However, that assertion is a
defense to the claim, not a showing that no claim has been amply
pled and must be dismissed.  See Good Food Services, Inc., 608
A.2d at 125 n.5 (stating that "the general rule is that, in order

for an indemnitee to prevail, the indemnitee must show by a preponderance of the evidence that [it] was actually liable to the person harmed or that the indemnitee submitted to the purported indemnitor for approval a proposed settlement with the plaintiff"). Nor would Watkins be entitled to summary judgment on Count I. Even if failure to present a proposed settlement to an indemnitor were an absolute defense to an action for equitable indemnification, Howard has demonstrated at least that there is a genuine factual dispute about whether Watkins was presented with an opportunity to review and approve the settlement with Goodwin. Howard attaches to its opposition the declaration of Timothy McCormack, the attorney who represented Howard in Goodwin's action, who states that he periodically advised Watkins' attorney of the status of the negotiations to settle Goodwin's claims against Howard and Watkins, and advised Watkins of Howard's expectation of a contribution from Watkins toward the settlement payment. (Def.'s Mem. Ex. B.)

Count I alleges a plausible claim for equitable indemnification.

## II. MISREPRESENTATION BY FRAUDULENT CONCEALMENT, FRAUD, NEGLIGENT MISREPRESENTATION

Count II of the complaint alleges that Howard placed Watkins in a position of trust and confidence as the Acting Dean of Student Life and Activities, imposing upon her a duty to disclose that Goodwin was infected with HIV, that Watkins and Porter had

mistreated Goodwin because of his HIV infection and their belief that he was homosexual, and that Goodwin had requested, but been refused, an accommodation for his HIV infection.  Count II further alleges that Watkins breached that duty by failing to disclose those facts, which damaged Howard by subjecting it to liability in Goodwin's action.  (Compl. ¶¶ 52-57.)  Count III of the complaint alleges that Watkins engaged in constructive fraud through the same non-disclosures referred to in Count II, and by informing representatives from Howard's Office of Human Resources Management and Office of General Counsel that she recommended not renewing Goodwin's contract only because of "behavior problems." (Compl. ¶¶ 58-62.)  Count IV of the complaint alleges that Watkins negligently misrepresented to Howard's Office of Human Resources Management and Office of General Counsel that the only illness that Goodwin suffered was his stroke in 1998, and negligently failed to disclose that Goodwin had requested but been denied an accommodation as a result of his HIV infection. (Compl. ¶¶ 63-68.)

Under District of Columbia law, the elements of a claim of fraudulent concealment are (1) a duty on behalf of the defendant to disclose to the plaintiff a material fact; (2) the failure to disclose that fact; (3) an intention to defraud or deceive the plaintiff; (4) action taken by the plaintiff in justifiable reliance on the concealment; and (5) damages as a result of the

-15-

defendant's concealment.  <u>Alexander v. Wash. Gas Light Co.</u>, 481
F. Supp. 2d 16, 36-37 (D.D.C. 2006).  Similarly, the "essential
elements of common law fraud are: (1) a false representation
(2) in reference to material fact, (3) made with knowledge of its
falsity, (4) with the intent to deceive, and (5) action is taken
in reliance upon the representation."  <u>Fort Lincoln Civic Ass'n,
Inc. v. Fort Lincoln New Town Corp.</u>, 944 A.2d 1055, 1074 n.22
(D.C. 2008) (quoting <u>Bennett v. Kiggins</u>, 377 A.2d 57, 59-60 (D.C.
1977)).  In addition, "the plaintiff must also have suffered some
injury as a consequence of his reliance on the
misrepresentation."  <u>Chedick v. Nash</u>, 151 F.3d 1077, 1081 (D.C.
Cir. 1998) (citing <u>Dresser v. Sunderland Apartments Tenants
Ass'n, Inc.</u>, 465 A.2d 835, 839 (D.C. 1983)).  The elements of a
claim of negligent misrepresentation are (1) a false statement or
omission of a fact that a defendant had a duty to disclose; (2)
that the defendant intended or should have recognized that the
plaintiff would be deleteriously affected by reliance on the
misrepresentation; and (3) that the plaintiff reasonably relied
upon the misrepresentation to its detriment.  <u>Hall v. Ford
Enter., Ltd.</u>, 445 A.2d 610, 612 (D.C. 1982).

Federal Rule of Civil Procedure 9(b) requires a plaintiff to
state with particularity the circumstances constituting fraud or
fraudulent concealment.  <u>See</u> Fed. R. Civ. P. 9(b); <u>Firestone v.
Firestone</u>, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (stating that

"[p]arties pleading fraudulent concealment must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts") (internal quotation omitted).  The complaint must plead with particularity matters such as the time, location and content of the false misrepresentations, the misrepresented fact and what was gained or lost as a result of the fraud.  <u>United States ex rel. Williams v. Martin-Baker Aircraft Co.</u>, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).  Requiring a plaintiff to plead fraud with particularity "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude."  <u>Id.</u> (quoting <u>United States ex rel. Joseph v. Cannon</u>, 642 F.2d 1373, 1386 (D.C. Cir. 1981)).

Watkins argues that Counts II, III, and IV should be dismissed because the complaint failed to plead fraud or misrepresentation with particularity.  (Def.'s Mem. at 6.) According to Watkins, "[t]here is not a single false or fraudulent statement identified, much less where, when, or to whom it was spoken."  (Def.'s Reply at 5.)  Watkins further argues that Howard did not reasonably rely on her misrepresentations because "Howard's lawyers had to ask enough

-17-

questions to satisfy themselves that her reasons were legally sufficient and were not retaliatory—if they chose not to, they cannot claim to have been defrauded." (Def.'s Reply at 8.) However, the complaint alleges with particularity facts and circumstances regarding the false or negligent representations and omissions made by Watkins to the Office of the General Counsel and the Office of Human Resources of Howard University in the complaint. (Pl.'s Opp'n at 18.) It identifies both Watkins' false statement - - that Goodwin's contract should not be renewed because he had "behavior problems" - - and her material omissions - - namely, that Goodwin was suffering from the medication he was taking for HIV and that he unsuccessfully requested accommodation for that problem. While the counts appear to overlap somewhat, the complaint alleges plausible causes of action of fraud and misrepresentation, and alleges the elements of fraud with sufficient particularity to survive Watkins' motion.

<u>CONCLUSION AND ORDER</u>

Howard's complaint alleges plausible claims of equitable indemnity, fraud, and misrepresentation. Therefore, it is hereby

ORDERED that the defendant's motion [3] to dismiss be, and hereby is, DENIED.

SIGNED this 27th day of April, 2012.

                        _____/s/_____
                        RICHARD W. ROBERTS
                        United States District Judge